UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.B., by and through his Guardians Ad Litem ERIC BAUMGARDNER and ROBIN MORRISEY,<br><br><div align="right">Plaintiff,</div><br>v.<br><br>SAN DIEGO UNIFIED SCHOOL DISTRICT,<br><br><div align="right">Defendant.</div> | Case No.:  23-cv-00528-AJB-DDL<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;**<br><br>**(2) AFFIRMING THE ALJ'S DECISION; and**<br><br>**(3) DENYING PLAINTIFF'S REQUEST FOR REIMBURSEMENT AND ATTORNEY'S FEES** |

Plaintiff L.B., by and through his Parent and guardian ad litem, Robin Morrisey, filed a motion for summary judgment appealing an administrative decision rendered by Administrative Law Judge Paul H. Kamoroff ("ALJ") of the Office of Administrative Hearings ("OAH") on March 15, 2023 ("Decision"). (Doc. No. 44.) San Diego Unified School District ("District") has filed a responsive brief in opposition. (Doc. No. 53.) For the reasons stated herein, the Court **DENIES** Plaintiff's motion for summary judgment, **AFFIRMS** the ALJ's decision, and **DENIES** Plaintiffs' request for reimbursement and attorney's fees.

1

## I.    BACKGROUND

This action arises under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*

### A.    Statutory Background

The IDEA "offers federal funds to States" for providing a free appropriate public education ("FAPE") "to all children with certain physical or intellectual disabilities." *Fry ex rel. E.F. v. Napoleon Cmty. Schs.*, 580 U.S. 154, 158 (2017) (citing 20 U.S.C. § 1412(a)(1)(A)). "An eligible child" has "a substantive right" to a FAPE, which consists of "both instruction tailored to meet a child's unique needs and sufficient supportive services to permit the child to benefit from that instruction." *Id.* (citing 20 U.S.C. § 1401(9), (26), (29)) (internal quotation marks omitted). School districts must provide a FAPE "at public expense, under public supervision and direction, . . . in conformity with" an Individualized Education Plan ("IEP"). 20 U.S.C. § 1401(9).

The IEP, "a personalized plan to meet all of the child's educational needs," is "the primary vehicle for providing each child with" a FAPE. *Fry*, 580 U.S. at 158 (internal quotation marks omitted); *see also* 20 U.S.C. § 1414(d). It is put together by the IEP Team, "a group of school officials, teachers, and parents." *Fry*, 580 U.S. at 158 (quoting 20 U.S.C. § 1414(d)(1)(A)(i)(II)(bb), (d)(1)(B)). "[T]he IEP documents the child's current 'levels of academic achievement,' specifies 'measurable annual goals' for how she can 'make progress in the general education curriculum,' and lists the 'special education and related services' to be provided so that she can 'advance appropriately toward [those] goals.'" *Id.* at 158–59 (second alteration in original) (quoting 20 U.S.C. § 1414(d)(1)(A)(i)(I), (II), (IV)(aa)). The IEP Team must consider "the strengths of the child"; "the concerns of the parents for enhancing the education of their child"; "the results of the initial evaluation or most recent evaluation of the child"; and "the academic, developmental, and functional needs of the child." 20 U.S.C. § 1414(d)(3)(A). The IEP must be in effect at the beginning of each school year and the "local educational agency" must ensure that the IEP Team

reviews the IEP annually. 20 U.S.C § 1414(d)(2)(A), (4)(A)(i); Cal. Educ. Code §§ 56343(d), 56344(c).

"[T]he IDEA establishes formal procedures for resolving disputes" between parents and school districts over IEPs. *Fry*, 580 U.S. at 159. "[A] dissatisfied parent may file a complaint as to any matter concerning the provision of a FAPE with the local or state educational agency (as state law provides)." *Id.* (citing 20 U.S.C. § 1415(b)(6)). "That pleading generally triggers a preliminary meeting involving the contending parties . . . ." *Id.* (cleaned up); *see also* 20 U.S.C. § 1415(e), (f)(1)(B)(i). "Assuming their impasse continues, the matter proceeds to a 'due process hearing' before an impartial hearing officer." *Fry*, 580 U.S. at 159 (quoting 20 U.S.C. § 1415(f)(1)(A)). "[A]ny decision by a hearing officer on a request for substantive relief 'shall' be 'based on a determination of whether the child received a free appropriate public education.'" *Id.* at 167 (quoting 20 U.S.C. § 1415(f)(3)(E)(i)). "Finally, a parent unhappy with the outcome of the administrative process may seek judicial review by filing a civil action in state or federal court." *Id.* at 159 (citing 20 U.S.C. § 1415(i)(2)(A)).

Parents who unilaterally place a child in private school may seek reimbursement for the costs of special education and related services. *See* 20 U.S.C. § 1415. "[C]ourts may grant reimbursement under § 1415(i)(2)(C)(iii) only when a school district fails to provide a FAPE *and* the private-school placement is appropriate." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 242 n.9 (2009). And the IDEA specifies that reimbursement is permitted "for the cost of [private school] enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment." *Id.* at 248 (quoting 20 U.S.C. § 1412(a)(10)(C)). That section was added by amendment in 1997 and elucidates the general authority to grant appropriate relief in 20 U.S.C. § 1415(i)(2)(C)(iii). *Id.* at 239, 242. It applies "to students who previously received special education and related services." *Forest Grove Sch. Dist. v. T.A.*, 523 F.3d 1078, 1087 (9th Cir. 2008), *aff'd*, 557 U.S. 230; 20 U.S.C. § 1412(a)(10)(C)(ii).

///

**B.    Factual Background**

While in sixth grade, L.B. began experiencing significant mental health issues, resulting in several hospitalizations due to "symptoms of rage, aggression, oppositions, suicidal ideation, and physical aggression at home." (Administrative Record ("AR") 3431–32, Doc. No. 32.) L.B. was diagnosed with Attention Deficit/Hyperactivity Disorder ("ADHD"), Specific Learning Disorder with impairment in mathematics, Sensory Processing Disorder, Disruptive Mood Dysregulation Disorder, Persistent Depressive Disorder, and Social Communication Disorder. (AR 1042.)

At the beginning of the 2019–2020 school year, L.B. was a seventh-grade student at Correia Middle School ("Correia") in San Diego Unified School District. (AR 1472.) On November 22, 2019, L.B. began residing at San Diego Center for Children, and his last day of attendance at Correia was October 25, 2019, due to hospitalizations. (*Id.*) On December 18, 2019, the District created an IEP for L.B., qualifying him under the classification of Emotionally Disturbed. (AR 670.) The District offered 29.33 hours a week of specialized academic instruction, 1800 minutes per week of mental health related services ("MHRS") – behavior intervention services, and 53.5 hours of MHRS. (AR 671.) Between 2019 and 2020, L.B. had been hospitalized seven times, due to homicidal and/or suicidal ideation and aggressive behaviors, for a total of sixteen days. (AR 3431–34, 3446–48.)

In the January 27, 2020, and February 27, 2020 IEPs, the same services were offered as that in the December 18, 2019 IEP,[1] with specialized academic instruction increasing to 30 hours per week. (AR 715, 790.) The IEPs also included small group instruction, incentives earned through positive behavior, coping strategies, a social skills group, behavior visual supports, and a behavior intervention plan. (AR 736–37, 810–11, 813–15.) L.B. asserts that although his needs dramatically increased after the December 2019 IEP

---

[1] The District notes the February 27, 2020 IEP included a typographical error, stating it should have stated 1,800 minutes per week of MHRS behavior intervention services, rather than 1,800 minutes per year. (Doc. No. 49 at 9 n.2.)

4

was drafted, the District did not make any substantive changes to L.B.'s IEP until two years later, even though the District and L.B.'s parents ("Parents") met for six IEP meetings during the time period at issue. (Doc. No. 44 at 10 (citing AR 921, 958, 989, 1183, & 1322).)

On February 28, 2020, one day after the February 27, 2020 IEP team meeting, Parents filed a request for a due process hearing with the OAH. (AR 3844.) Parents did not seek reimbursement in that complaint. (*Id.*) Thereafter, on May 5, 2020, Parents and the District executed a settlement agreement. (AR 1496.) As part of the agreement, Parents consented to the IEP completed on February 27, 2020, and the parties agreed that L.B. would attend the District's Riley Alternative School ("Riley") for the 2020–2021 school year. (AR 1496–97.) L.B. attended San Diego Center for Children for the remainder of the 2019–2020 school year.[2] (AR 3850.)

On August 31, 2020, L.B. began attending school at Riley. (AR 1496.) During this time, schools were closed due to the COVID-19 pandemic. (AR 2048; 2785–86.) Like other District students, L.B. attended school through distance learning. (AR 904.) L.B. was often absent from his classes, (AR 856, 3452), did not participate in asynchronous learning, (AR 3458), and refused to attend his therapy sessions, (AR 3453). Moreover, L.B. was often agitated during school hours, becoming physically aggressive towards his family members and breaking things in his home. (AR 3459–61.)

L.B. ceased attending school with Riley after twenty-one days. (Doc. No. 49 at 10.) On September 29, 2020, L.B.'s father emailed L.B.'s special education teacher, stating L.B. would "be going to a wilderness therapy camp starting tomorrow. They have an academic component but obviously he will not be attending Riley during this time." (AR 891.) Thus, on September 30, 2020, L.B. stopped attending school in the District and began

---

[2] In March 2020, schools closed due to the COVID-19 pandemic. Both public and private schools provided education to students through distance learning, typically comprised of both synchronous and asynchronous learning. *See* Cal. Educ. Code §§ 43501, 43504 (repealed Jan. 1, 2022).

attending Trails Carolina ("Trails"), a wilderness program in North Carolina. (AR 891, 899.) The District sent a response on October 1, 2020, acknowledging that Parents gave notice of unilateral placement at a residential treatment center and that the placement would not be funded by the District. (AR 913.) While L.B. was at Trails, Parents and District convened three IEP meetings, on October 9, November 5, and November 13, 2020. (AR 922, 959, 990.)

Thereafter, Parents placed L.B. at Whetstone Academy ("Whetstone"), a boarding school in South Carolina, from December 30, 2020, to December 17, 2021. (AR 1137, 1853.) Parents did not notify the District of this placement until on or about April 27, 2021. (AR 1213–14.)

On March 6, 2021, Parents emailed the District an evaluation conducted by Dr. Jennifer Zeisz and asked that the IEP team "reconsider[] its determination not to fund the [Residential Treatment] placement." (AR 1085.) In response, the IEP Team convened a meeting on April 27, 2021, (AR 1184), and again on October 8, 2021, (AR 1299). At the October 8, 2021 IEP team meeting, the District stated it could not "get to an offer of FAPE today" because it "want[ed] to make sure we have all the data" and it had not completed their evaluations. (AR 1301.) The evaluation was finally complete on November 27, 2021. (AR 1694.) L.B. returned to the District on January 7, 2022. (AR 1900–01.) The District did not make an offer of FAPE for L.B.'s private schooling.

### C.    Procedural Background

On August 31, 2022, Plaintiff filed the instant request for a due process hearing with the OAH. (AR 1.) As remedies, he sought full reimbursement for the costs associated with L.B.'s residential placements by Parents at Trails and Whetstone through December 2021. (AR 526–32.) The due process hearing began on January 10, 2023, before ALJ Kamoroff. (AR 1994.) After the parties and the ALJ clarified issues based on the complaint, and Plaintiff's motions to correct issues and withdraw issues, the issues presented to the ALJ were as follows:

///

1. Did the District deny L.B. a FAPE during the 2020–2021 school year, beginning August 31, 2020, through October 9, 2020, by failing to:
   a. implement L.B.'s IEP, dated December 18, 2019; January 27, 2020; and February 27, 2020;
   b. offer or implement services and supports for mental health; and
   c. assess in the area of behavior?
2. Did the District deny L.B. a FAPE during the 2020–2021 school year by failing to provide prior written notice of its decision to not place L.B. at a residential treatment center?
3. Did the District deny L.B. a FAPE, pursuant to an October 9, 2020 IEP, by failing to:
   a. offer an appropriate placement;
   b. offer appropriate supports and services;
   c. offer appropriate annual goals;
   d. include legally sufficient present levels of performance;
   e. make a clear and specific FAPE offer;
   f. consider the full continuum of educational placements;
   g. assess L.B. in the area of behavior prior to the IEP team meeting;
   h. re-evaluate L.B. in the areas of psychoeducation, educationally related mental health services, and social and emotional functioning;
   i. revise L.B.'s IEP; and by
   j. predetermining the IEP?
4. Did the District deny L.B. a FAPE, pursuant to a November 5, 2020, and November 13, 2020 IEP, by failing to:
   a. offer an appropriate educational placement;
   b. offer appropriate supports and services;
   c. offer appropriate goals;
   d. include legally sufficient present levels of performance;
   e. consider the full continuum of educational placements;
   f. provide Parents accurate information;
   g. assess L.B. in the area of behavior;
   h. re-evaluate L.B. in the areas of psychoeducation, educationally related mental health services, and social and emotional functioning; and
   i. revise L.B.'s IEP?
5. Did the District deny L.B. a FAPE in December 2020 by failing to revise L.B.'s IEP?
6. Did the District deny L.B. a FAPE by failing to hold an IEP team meeting within 30 days of Parents' request on March 6, 2021?
7. Did the District deny L.B. a FAPE, pursuant to an April 27, 2021 IEP, by:

7

     a. failing to consider an independent educational evaluation by Jennifer Zeisz, Ph.D.; and

     b. failing to make a formal, clear, and specific FAPE offer?

8. Did the District deny L.B. a FAPE during the 2021–2022 school year, up to December 1, 2021, pursuant to an August 17, 2021 letter, by:

     a. failing to offer a FAPE;

     b. predetermining L.B.'s IEP;

     c. failing to include Parents in decisions regarding L.B.'s IEP;

     d. failing to include persons knowledgeable of L.B. and their evaluation data when offering a placement;

     e. failing to make a clear and specific offer of FAPE;

     f. offering a FAPE without convening an IEP team meeting; and

     g. failing to consider an independent educational evaluation by Dr. Zeisz?

9. Did the District deny L.B. a FAPE during the 2021–2022 school year, up to December 1, 2021, by failing to revise L.B.'s IEP?

10. Did the District deny L.B. a FAPE during the 2021–2022 school year, up to December 1, 2021, by failing to assess and develop an IEP within 60 days of Parents' consent to an assessment plan signed May 13, 2021?

11. Did the District deny L.B. a FAPE during the 2021–2022 school year, up to December 1, 2021, by failing to offer a FAPE at the October 8, 2021 IEP team meeting?

(AR 1903–05.) The ALJ conducted the due process hearing on January 10, 11, 12, 17, 18, 19, 24, 25, and 26, 2023. (AR 1902.) On February 21, 2023, the ALJ took the matter under submission, after the parties filed their written closing arguments. (AR 1903.) On March 15, 2023, the ALJ issued a 40-page decision finding entirely in favor of the District on all issues and denying Plaintiff's claims for relief. (AR 1902–42.)

The ALJ found as a preliminary matter that Parents privately placed L.B. from September 30, 2020, through the end of December 2021. (AR 1910.) Further, the ALJ found "Parents did not request for San Diego to develop an IEP for Student while he was privately placed. Therefore, San Diego was not obligated to develop an IEP or offer Student a FAPE from September 30, 2020, through the end of December 2021." (*Id.* (citing *Capistrano Unified Sch. Dist. v. S.W.*, 21 F.4th 1125, 1138–40 (9th Cir. 2021) ("*Capistrano*")).)

### 1.  Issue 1

On Issue 1, the ALJ found the District could not provide L.B. a FAPE following Parents' private placement of L.B. at Trails on September 30, 2020, and further held the District was not "obligated to offer Student a FAPE while Student was privately placed because Parents' notice of private placement did not request for San Diego to develop an IEP for Student." (AR 1913.) Thus, the ALJ held that L.B.'s issue 1.a. was limited to the twenty-two school days that L.B. was enrolled at Riley, from August 31, 2020, to September 29, 2020. (*Id.*) Ultimately, the ALJ held that L.B. failed to prove by a preponderance of the evidence that the District denied him a FAPE because the evidence showed the District appropriately met L.B.'s educational needs during distance learning, (AR 1916), District staff communicated with Parents frequently regarding L.B.'s school program, progress, and mental health needs, (AR 1917), and that while L.B. missed some classes and counseling sessions, each class and service was made available to him, (AR 1918).

As to issue 1.b., the ALJ found in favor of the District, holding that the District materially implemented L.B.'s mental health behavior intervention services through synchronous and asynchronous instruction. (AR 1919.) Specifically, the ALJ stated that L.B. "did not allege the mental health services offered in the February 27, 2020 IEP were inappropriate. In fact, Student did not challenge the appropriateness of any part of the February 27, 2020 IEP as an issue for this hearing." (*Id.*) Moreover, the ALJ reiterated that while L.B. missed individual counseling sessions, those services were made available to him, "and the time frame, 22 days, was too short to determine if Student would continue missing services or if this was a temporary problem experienced by all students when transitioning to a new school or learning platform." (AR 1919–20.)

On Issue 1.c., the ALJ held that L.B. failed to show the District denied him a FAPE by failing to assess for behavior because, "despite frequent communications between Parents and school staff throughout September 2020, Parents failed to communicate that Student demonstrated increased behavioral problems at home." (AR 1921.) The ALJ

further found significant that "neither Parents nor school staff requested any assessment, including for behavior, during this time[,]" and that the District's mental health service provider testified that L.B. "did not demonstrate any behavior issues while at school, nor were any behavior concerns reported by Student's teachers or behavior aides." (*Id.*)

### 2. Issue 2

The ALJ found in favor of the District on Issue 2—whether the District denied L.B. a FAPE during the 2020–2021 school year by failing to provide prior written notice of its refusal to place L.B. at a residential treatment center—noting that L.B.'s claim fails for several reasons. (AR 1922.) First, the ALJ found that neither the District nor Parents requested a change to L.B.'s IEP that required prior written notice, but rather, when Parents notified the District that they were privately placing L.B. at Trails, they did not request any changes to placement in L.B.'s IEP, express disagreement with the IEP, or request an IEP team meeting. (*Id.*) Moreover, the ALJ found that despite this, "in an abundance of caution," the District provided Parents with prior written notices on October 1, 2020, and October 26, 2020, in which the District refused to fund a residential treatment center placement for L.B. (AR 1923.) Regarding L.B.'s argument that Parents' request for the District to reconsider its prior written notice required the District to send another prior written notice, the ALJ held the District was not required to send another prior written notice regarding the same refusal. (*Id.*)

### 3. Issues 3 and 4

On Issues 3 and 4, L.B. asserted the District failed to make an offer of FAPE pursuant to the October 9, November 5, and November 13, 2020 IEPs. The ALJ first found L.B. mischaracterized the October 9, 2020, November 5, 2020, and November 13, 2020 IEP team meetings as separate IEP offers, but that they were instead amendment IEP team meetings held over three days. (AR 1924–25.) The ALJ further found the District and Parents "agreed the only purpose for the amendment IEP was to disenroll Student" from the District. (AR 1925.) Ultimately, the ALJ held that L.B.'s claims regarding Issues 3 and 4 failed as a matter of law because the District was not obligated to develop an IEP or offer

10

a FAPE after Parents unilaterally placed L.B. in private school and disenrolled him from the District. (AR 1926.)

### 4. Issue 5

In Issue 5, L.B. asserted the District denied him a FAPE by failing to revise his IEP in December 2020, arguing that his annual IEP team meeting was due in December 2020 and the District did not hold that meeting for L.B. during the 2020–2021 school year. (AR 1926.) The ALJ found that Parents did not request for the District to hold an annual IEP team meeting in December 2020, or for the District to develop an IEP while L.B. was privately placed. (AR 1927.) The ALJ thus held it was not necessary for the District to revise L.B.'s educational program while he was privately placed, including in December 2020. (*Id.*)

### 5. Issue 6

Regarding Issue 6, L.B.'s mother sent an email to the District on March 6, 2021, which "request[ed] the District reconsider its determination [not] to fund the placement [at a residential treatment center]." (AR 1927–28.) The ALJ held this email did not constitute a request for an IEP team meeting, and stated, "Mother and Father were educated professionals, represented by an attorney, and had filed a prior complaint against San Diego. Parents were capable of requesting an IEP team meeting if that is what they decided. Rather, the March 6, 2021 email was a response to San Diego's October 1, 2020 prior written notice that, for the first time, requested for San Diego to fund Student's private placement." (AR 1928.)

### 6. Issue 7

L.B. asserted in Issue 7 that the District denied him a FAPE by failing to consider an independent educational evaluation by Dr. Zeisz and by failing to make a formal, clear, and specific FAPE offer during the April 27, 2021 IEP team meeting. (AR 1929.) The ALJ found that Dr. Zeisz thoroughly presented her report to the IEP team during the April 27, 2021 IEP team meeting, and the team considered Dr. Zeisz's report and determined they would need additional information. (*Id.*) Specifically, the "April 27, 2021 IEP team

11

meeting was held to review Dr. Zeisz's independent educational evaluation and did so, thoroughly, and with school staff qualified to consider the report." (*Id.*) The ALJ further held the District was under no duty to offer a FAPE at that time because Parents had privately placed L.B. and did not request for the District to develop an IEP. (*Id.* (citing *Capistrano*, 21 F.4th at 1138–40).)

### 7.  Issues 8 and 9

L.B. asserted in Issues 8 and 9 that the District denied him a FAPE during the 2021–2022 school year, up to December 1, 2021, pursuant to a letter dated August 17, 2021, by failing to revise his IEP. (AR 1931.) The ALJ found the August 17, 2021 letter was not an IEP offer, as asserted by L.B., but was rather a prior written notice of the District's proposal to assess L.B. (AR 1932.) Ultimately, the ALJ held that because Parents privately placed L.B., the District was not required to offer L.B. a FAPE pursuant to the August 17, 2021 letter—or at all—until Parents requested that the District develop an IEP. (AR 1932–33 (citing *Capistrano*, 21 F.4th at 1138–40).) The ALJ further held that L.B.'s allegations that the District denied him a FAPE was factually and legally incorrect, and that his claim that he was denied a FAPE because the District did not revise his IEP while he was privately placed was also incorrect. (AR 1933.)

### 8.  Issue 10

On Issue 10, the ALJ found that while the evidence showed the District did not complete its assessment of L.B. within the timeline required for special education assessments, Parents did not make L.B. available for assessments in California, thus eliminating the District's duty to complete the assessments within 60 days. (AR 1934–35.) Specifically, the ALJ noted that "[f]ederal courts have held that a parent who insists on placing conditions on assessments may be regarded as having refused consent to the assessments." (AR 1935.)

### 9.  Issue 11

Finally, the ALJ held on Issue 11 that the District did not deny L.B. a FAPE by failing to offer a FAPE at an October 8, 2021 IEP team meeting because the District was

1  not obligated to develop an IEP for L.B. while he was privately placed, and thus, it was not

2  necessary for the District to offer L.B. a FAPE on October 8, 2021. (AR 1937.)

## II.  LEGAL STANDARD

"Judicial review under the IDEA is an odd creature in administrative law." *Los Angeles Unified Sch. Dist. v. A.O. ex rel. Owens*, 92 F.4th 1159, 1168 (9th Cir. 2024). The IDEA instructs a reviewing court to receive and review the record of the administrative proceeding, hear additional evidence at the request of either party, and grant appropriate relief based on the preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(c)(i)–(iii). "Thus, judicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review." *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471 (9th Cir. 1993). "Nevertheless, complete *de novo* review 'is inappropriate.'" *JG v. Douglas Cnty. Sch. Dist.*, 552 F.3d 786, 793 (9th Cir. 2008) (quoting *Amanda J. ex rel. Annette J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 887 (9th Cir. 2001)). When reviewing state administrative decisions, "courts must give 'due weight' to judgments of education policy. . . ." *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987) (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982)). This is because federal judges are not experts in educating children with disabilities and the IDEA does not empower district courts to "substitute their own notions of sound educational policy for those of the school authorities which they review." *Rowley*, 458 U.S. at 206. Accordingly, administrative findings that are "thorough and careful" are entitled to "particular deference." *JG*, 552 F.3d at 793.

Nevertheless, "courts give less deference than is conventional in review of other agency actions. How *much* deference to give state educational agencies . . . is a matter for the discretion of the courts." *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 438 (9th Cir. 2010) (internal citations and quotation marks omitted). More deference is given "if the findings are thorough and careful." *A.M. v. Monrovia Unified Sch. Dist.*, 627 F.3d 773, 778 (9th Cir. 2010); *see also M.C. ex rel. M.N. v. Antelope Valley Union High*

*Sch. Dist.*, 858 F.3d 1189, 1194 (9th Cir. 2017). The district court "must actually examine the record to determine whether it supports the ALJ's opinion." *M.C.*, 858 F.3d at 1194 n.1.

In IDEA cases, "the district court essentially conduct[s] a bench trial based on a stipulated record." *Ojai*, 4 F.3d at 1427. "Though the parties may call the procedure a 'motion for summary judgment' in order to obtain a calendar date from the district court's case management clerk, the procedure is in substance an appeal from an administrative determination, not a summary judgment." *Capistrano Unified Sch. Dist. v. Wartenberg ex rel. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995) ("*Wartenberg*"). Thus, this Court treats Plaintiff's motion as an appeal of an administrative decision and will "read the administrative record, consider the new evidence, and make an independent judgment based on a preponderance of evidence and giving due weight to the hearing officer's determinations." *Id.*; *see also E.V.E. v. Grossmont Union High Sch. Dist.*, No. 22-CV-941-RSH-BGS, 2023 WL 5635728, at *5 (S.D. Cal. Aug. 31, 2023) (treating cross-motions for summary judgment as an appeal of the hearing officer's administrative decision).

## III.   DISCUSSION

In his motion for reversal, Plaintiff claims the ALJ wrongly decided in favor of the District. (Doc. No. 44.) Plaintiff argues the ALJ erred by finding he is not entitled to reimbursement for tuition and associated costs of attendance, travel, and visitation. (*Id.* at 33.) Plaintiff also requests the Court award Plaintiff attorney's fees as the prevailing party in this action. (*Id.*)

### A.   Threshold Issues

Before turning to the merits of this appeal, the Court first addresses Plaintiff's arguments concerning the degree of deference the Court should give to the ALJ's decision, and the ALJ's interpretation and application of *Capistrano Unified School District v. S.W.*, 21 F.4th 1125 (9th Cir. 2021).

///

///

### 1.      Deference to the ALJ's Decision

Plaintiff argues the Court should not afford the ALJ's decision any deference because the ALJ (1) misstated or ignored the facts at issue; (2) did not discuss the expert witness's testimony; (3) omitted issues in L.B.'s final decision; and (4) misstated L.B.'s argument to conform to the ALJ's own previous decision. (Doc. No. 44 at 14–22.)

District courts may treat a hearing officer's findings as "thorough and careful" when the hearing officer participates in the questioning of witnesses and writes a decision "contain[ing] a complete factual background as well as a discrete analysis supporting the ultimate conclusions." *Park, ex rel. Park v. Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1031 (9th Cir. 2006). "But neither the duration of the hearing, nor the ALJ's active involvement, nor the length of the ALJ's opinion can ensure that the ALJ was 'thorough and careful.'" *M.C.*, 858 F.3d at 1194 (quoting *J.W.*, 626 F.3d at 440). Rather, a district court judge "must actually examine the record to determine whether it supports the ALJ's opinion." *Id.* at 1194 n.1. Courts will give deference to an ALJ's decision "when it 'evinces his or her careful, impartial consideration of all of the evidence and demonstrates his or her sensitivity to the complexity of the issues presented.'" *J.W.*, 626 F.3d at 440–41 (quoting *Cnty. of San Diego v. Cal. Special Educ. Hearing Off.*, 93 F.3d 1458, 1466 (9th Cir. 1996)) (cleaned up).

### a.      Misstated or Ignored Facts

Plaintiff first asserts the ALJ misstated or ignored the facts at issue, and thus this Court should not afford the ALJ's decision any deference. (Doc. No. 44 at 14.)

Regarding Issues 3 and 4, Plaintiff asserts the ALJ misstated several key facts, including (1) Parents did request an IEP for L.B. while he was privately placed (twice explicitly and once constructively); (2) the purpose of the October 9, November 5, and November 13, 2020 IEP team meetings was to discuss L.B.'s IEP and placement, not to disenroll L.B. from the District; and (3) Parents "never made clear their intent to keep Student privately placed" through December 2021. (*Id.* at 15.)

///

### i.     Whether Parents Requested an IEP

In Issues 3 and 4, Plaintiff asserted in relevant part that the District denied him a FAPE "by failing to revise Student's IEP, and predetermining the IEP." (AR 1924.) In his decision, the ALJ noted that while an amendment IEP meeting was held on October 9, 2020, which was then continued to November 5 and 13, 2020, the District was not obligated to assess L.B., offer a FAPE, or provide L.B. a FAPE after September 30, 2020, because "Parents did not request changes to Student's IEP, disagree with the IEP, request reimbursement for a private placement, or ask San Diego to develop an IEP while Student was privately placed. Nor did Parents or any of his teachers request an assessment of any sort." (AR 1924–25.) Moreover, the ALJ stated that "San Diego was not obligated to develop an IEP for Student until requested to do so by Parents." (AR 1926.)

On September 29, 2020, Parents emailed the District, stating L.B. "will be going to a wilderness therapy camp starting tomorrow. They have an academic component but obviously he will not be attending Riley during this time. Please feel free to give me a call to discuss further . . . ." (AR 891.) This email did not request changes to L.B.'s IEP or ask the District to develop an IEP. Additionally, the ALJ correctly noted that this email "did not express disagreement with Student's IEP, request reimbursement, or request an IEP team meeting." (AR 1908.)

On October 22, 2020, Parents emailed the District ("October 22 Email"), acknowledging they "unilaterally placed [L.B.] at the wilderness [trails] program" and stated:

> What I do want noted somewhere is the impetus for doing so which was his behavior including his inability to successfully participate in school. . . . he has been truant and we received official documentation of such in the form of a letter and we also received a detailed report of his attendance. His 1:1 therapy was had [sic] not started as of the time he left to placement at wilderness [treatment]. So [L.B.] did not receive many of the components necessary to support his IEP. [G]roup therapy was not yet an available service. Also the opportunity to obtain support in moments of behavioral decompensation are really not accessible due to the virtual learning required

23-cv-00528-AJB-DDL

during the pandemic. Happy to set up more time in the form of a meeting to discuss.

(AR 948.)  Plaintiff asserts this exchange constituted Parents' first request that the District convene an IEP team meeting and reasonably believed the email would be construed as a description of her concerns regarding L.B.'s placement at Riley. (Doc. No. 44 at 16.) The ALJ's decision does not discuss whether Plaintiff requested an IEP *meeting*, and the District does not dispute this. (*See* AR 1924–26; Doc. No. 53 at 14–20.)

Thereafter, on October 28, 2020, the District wrote, "please let me know if you would like me to schedule another IEP to discuss your concerns from last IEP . . . ." (AR 1509.) Parent responded in the affirmative on November 1, 2020, requesting: "Please can we schedule an IEP meeting this week ASAP?" (AR 956.) Thus, on November 5, 2020, the District convened another IEP meeting. (*See* AR 959.) Plaintiff asserts this was the second time Parents requested an IEP meeting. (Doc. No. 44 at 16.) As previously stated, the ALJ's decision does not discuss whether Plaintiff requested an IEP *meeting*, (*see* AR 1924–26), and the District acknowledges that L.B.'s mother requested an IEP meeting by an email sent to Ms. Salorio, (Doc. No. 53 at 15).

However, as discussed by the ALJ, the record does not show that Parents requested the District to revise, change, or develop an IEP for L.B., nor does Plaintiff's brief discuss this issue. (*See generally* Doc. No. 44 at 15–17.) The overall administrative record and the ALJ's detailed order does not support Plaintiff's arguments here.

### ii. Whether the October and November IEP Meetings Were Held with the Intent to Develop an IEP

Next, Plaintiff asserts the evidence does not support the ALJ's finding that "San Diego and Parents agreed the only purpose for the amendment IEP was to disenroll Student." (Doc. No. 44 at 17 (citing AR 1925).)

On October 1, 2020, the District emailed Parents that "we do need to hold an IEP" and stated, "it is an amendment to an IEP so we do not have to formally have the meeting

17

if you both agree to this or we can formally have the meeting via zoom." (AR 911.) The same day, Sue Solario, lead teacher and interim principal at Riley, sent Parents a prior written notice informing Parents that the District had a FAPE available and that it would not fund a residential placement. (AR 913.) Thus, on October 9, 2020, the District convened an IEP meeting at which L.B.'s father attended. (*See* AR 919.) Ms. Solario testified that this meeting was convened "to get closure" and because Parents "wanted us to retroactive the drop date to September 30, 2020, the actual physical date that [L.B.] was attending class . . . ." (AR 2539–40.) The October 9 IEP stated, "When the [Trails] program is over [L.B.] will be re-enrolled back at Riley since that is the offer of FAPE, and a [sic] interim IEP will be held to review IEP and level of service." (AR 946.)

However, Plaintiff asserts disenrollment was not mentioned until an October 28, 2020 email from Ms. Solario, in which she wrote, "Also please let me know if you would like me to schedule another IEP to discuss your concerns from last IEP . . . . At this time, [L.B.] is still enrolled fulltime with us, and is at risk of receiving a D or an F in two or more of his classes for non attendance and not completing work since 9/30/20, we will need to hold an IEP to discuss this as well." (AR 956.) Plaintiff thus asserts "the IEP meeting was also scheduled to discuss Parents' concerns from the previous meeting, which included concerns articulated in Parent's letter regarding L.B.'s placement. (Doc. No. 44 at 18 (citing AR 948).) However, in response to Ms. Solario's October 28 email, dated November 1, 2020, Parents requested an IEP meeting because Parent was "not sure I understand all of this [w]ith his grades." (AR 956.) Ms. Solario further testified that the following November 5, 2020 IEP meeting was requested "in response to the fact that [L.B.] was at risk of receiving a D or an F in two or more of his classes." (AR 2495–96.) Following the November 13, 2020 IEP meeting, Ms. Solario sent Parents a final copy of the IEP for their records, and stated she "will take the next steps of dis-enrolling [L.B.] as of 9/30/20 and reverting his grades back to the same date." (AR 1027.) Parents emailed back that they "have reviewed and agree." (*Id.*)

///

18

Plaintiff fails to offer any evidence in the record to show the October and November IEP meetings were held with the intent to develop an IEP. There is no evidence to show Parents requested any changes to the IEP, any assessments, or for the District to develop an IEP for L.B. while he was privately placed. Although Parents' October 22 Email and the following November 5, 2020 IEP memorialize Parents' concerns, (*see* AR 948, 983), there is no discussion about developing, changing, or revising L.B.'s IEP. Moreover, while Plaintiff generally cites various testimonies during the hearing to support his argument, where he has not cited relevant portions of the record, the Court does not find or supply evidence on L.B.'s behalf. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("[J]udges are not like pigs, hunting for truffles buried in briefs.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). The overall administrative record and the ALJ's detailed order does not support Plaintiff's arguments here.

### iii. Whether L.B. Was Scheduled to Stay at Whetstone for One Calendar Year

Plaintiff further argues the ALJ wrongly found that "Parents planned to keep L.B. at Whetstone until December 2021." (Doc. No. 44 at 18.) Plaintiff asserts "[t]here is not a single piece of evidence or testimony that supports the ALJ's assertion that Parents planned to keep L.B. at Whetstone until December 2021." (*Id.*)

In his decision, the ALJ stated that "[t]estimony from Andreya Taylor, a mental health service provider employed by Whetstone Academy, confirmed that Student's scheduled stay at Whetstone was one calendar year." (AR 1909.) When asked during the OAH hearing "how long [L.B.'s] anticipated stay would be" when he first entered Whetstone in December 2020, Ms. Taylor testified that she "always project[s] out one year." (AR 2921–22.) This testimony does not support Plaintiff's argument that the ALJ misstated facts here. Indeed, the ALJ did not make any statements as to what Parents planned or intended, and merely stated that L.B.'s scheduled stay was anticipated to be one calendar year, despite changes to his discharge date thereafter. Indeed, L.B.'s anticipated discharge date was revised several times. On January 14, 2021, Whetstone issued a

Treatment Plan Review which stated that L.B.'s anticipated discharge date was August 26, 2021. (AR 1848–49.) In July, L.B.'s anticipated discharge date was extended to October 28, 2021. (AR 1852.) In September, the date was again extended to December 30, 2021. (AR 1897.) Finally, on December 22, 2021, Whetstone's Discharge Summary stated L.B.'s date of discharge was December 17, 2021. (AR 1853.) Thus, the Court finds the ALJ did not misstate the testimony.

The District further asserts in opposition that a parent's *intent* in unilaterally placing a student privately is irrelevant, and "is specifically what the Ninth Circuit rejected in *Capistrano*." (Doc. No. 53 at 11–12.) The Court agrees. The court in *Capistrano* held that a district's obligation to prepare in IEP depends on whether the child has been enrolled by their parents in private school. *Capistrano*, 21 F.4th at 1139. The court also distinguished the case from *J.W. ex rel. J.E.W. v. Fresno Unified School District*, 626 F.3d 431, 460 (9th Cir. 2010), in which the school district was obligated to prepare an IEP where the parents notified the district of their intent to enroll in private school but the student was still in public school at the time of the IEP meeting. *Id.* at 1139 n.6.

### iv.   The ALJ's Discussion of Plaintiff's Expert Witness Testimony

Plaintiff asserts the ALJ's decision did not include any discussion of L.B.'s expert witness testimony from Dr. Zeisz, and this failure "demonstrates a lack of a thorough and careful review of the testimony and evidence." (Doc. No. 44 at 19.) To note, Dr. Zeisz is mentioned several times throughout the ALJ's discussion of Issue 7. (*See* AR 1929–31.) Indeed, the ALJ framed Issue 7 as "Student complains that San Diego denied him a FAPE by failing to consider an independent educational evaluation by Dr. Zeisz . . . ." (AR 1929.) The ALJ goes on further to describe how Dr. Zeisz conducted an Independent Educational Evaluation ("IEE") of L.B. on November 20, 2020, which L.B.'s mother then provided to the District by email on March 6, 2021. (*Id.*) The ALJ then discussed the April 27, 2021 IEP team meeting, at which Parents and Dr. Zeisz attended to review Dr. Zeisz's evaluation, and found "Dr. Zeisz thoroughly presented her report to the IEP team during

the April 27, 2021 IEP team meeting." (AR 1930.) The ALJ ultimately found that L.B.'s "claim that San Diego did not consider Dr. Zeisz's independent educational evaluation is incorrect. The April 27, 2021 IEP team meeting was held to review Dr. Zeisz's independent educational evaluation and did so, thoroughly, and with school staff qualified to consider the report." (*Id.*)

Although the ALJ's decision does not include Dr. Zeisz's expert witness testimony, the record demonstrates he thoroughly and carefully reviewed the testimony and evidence. Moreover, Dr. Zeisz's testimony relied heavily on her findings that were reported in the IEE, which was considered by the ALJ. (*See* AR 3016–20.)

### v.  Whether the ALJ Omitted Issues in L.B.'s Final Decision

"An ALJ opinion is not thorough and careful, even after a lengthy hearing where the ALJ was actively involved, where it fails to address all issues and disregards evidence presented at the hearing." *Smith ex rel. C.M. v. Tacoma Sch. Dist.*, 476 F. Supp. 3d 1112, 1123 (W.D. Wash. 2020) (citing *M.C.*, 858 F.3d at 1194).

Plaintiff argues the ALJ omitted Issue 1(dd) from his decision, originally pled as "Failing to consider the full continuum of educational placements at the April 27, 2021 IEP." (Doc. No. 44 at 19.) The District responds that the ALJ correctly concluded that the District owed "no duty to Student to offer a FAPE in April 2021" because he was privately placed and that "there is no authority that requires IEP teams to consider a full continuum of placement options at every IEP meeting." (Doc. No. 53 at 20 n.11 (citing AR 1931).)

Here, the Court agrees with Plaintiff as to this point because the ALJ failed to make any reference to this issue in the Decision.

### vi.  Whether the ALJ Misstated L.B.'s Argument

Finally, Plaintiff asserts the ALJ included an argument in his decision that L.B. did not argue at the hearing or in closing briefs, and that the ALJ's language closely followed language from the ALJ's decision in a separate case. (Doc. No. 44 at 19–20.)

///

On July 29, 2022, ALJ Kamoroff issued a decision for *Parents v. Stanislaus Union School District*, OAH Case No. 2022040227. In *Stanislaus*, the ALJ wrote, "Student argues Stanislaus should have provided Student an in-person aide during distance learning despite the foregoing. Student relies on *Parent v. Orcutt Union Sch. Dist.*, OAH Case 2020100618 (April 22, 2021) (*Orcutt*), to support his assertion that he qualified for an exception to distance learning." *Stanislaus*, OAH Case No. 2022040227, at 64. Similarly, in the instant case, the ALJ stated in his decision, "Student argues San Diego should have provided Student in-person instruction during distance learning, including in-person mental health services, despite the foregoing. Student's argument is supported by *Parent v. Orcutt Union Sch. Dist.*, OAH Case No. 2020100618 (April 22, 2021) (*Orcutt*)." (AR 1915.)

In reviewing the Administrative Record, it appears Plaintiff asserted in part that the District should have provided L.B. with in-person instruction during distance learning. For example, in L.B.'s Closing Brief, he asserted that L.B. "should have received group mental health services pursuant to his IEP[,]" but according to Aaron Stroud, L.B.'s mental health services provider, "you couldn't do therapy sessions, therapeutic groups at that time during COVID[.]" (AR 510.) Moreover, L.B. argued he "could not access his education at Riley during distance learning, yet the District continued to offer Riley via distance learning in the October 9, November 5, and November 13, 2020 IEPs." (AR 514.) L.B. further asserted "Riley's virtual program had proven ineffective as [L.B.] was missing significant amounts of class, did not do schoolwork during asynchronous learning and refused to attend therapy sessions." (*Id.*) Moreover, L.B. stated that "[w]ithout the structure and support of a full day, *in-person program*, [L.B.] could not access his education, including his mental health supports." (AR 515 (emphasis added).)

As to Plaintiff's argument that the "District failed to provide services required by L.B.'s IEP in *any* form, virtually or otherwise[,]" (Doc. No. 44 at 20), the ALJ also addressed whether the District appropriately met L.B.'s educational needs during distance

learning. (*See* AR 1916–18.) Thus, based on the Administrative Record, the Court finds the ALJ did not misstate L.B.'s argument.[3]

Accordingly, after a review of the Administrative Record, including the ALJ's Decision, the Court is satisfied that the ALJ adjudicated this case with thoroughness and care, except that the Decision did not mention whether the District failed to consider the full continuum of educational placements at the April 27, 2021 IEP. The findings of fact in the Decision otherwise were thorough and well-reasoned. Thus, the Court would defer to the ALJ's factual findings, but would independently review whether the April 27, 2021 IEP failed to consider the full continuum of educational placements. *See R.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 943 (9th Cir. 2007) (deferring to the hearing officer's "thorough and careful" findings and conclusions while independently reviewing the testimony the hearing officer did not mention in her decision).

Although this Court has access to the entire record from those hearings, the Court recognizes there is a benefit to having presided over a hearing when weighing conflicting evidence. Regardless of the deference given to the ALJ's decision, this Court, of course, still bears the responsibility of reviewing the record and the ALJ's findings of fact and ensuring that the law was correctly applied. The Court has done so below.

### 2. The ALJ's Interpretation of *Capistrano*

Plaintiff next argues the ALJ misinterpreted and misapplied *Capistrano*, 21 F.4th 1125, thereby affecting each of L.B.'s substantive FAPE arguments. (Doc. No. 44 at 20–22.)

Initially, the ALJ stated that L.B.'s Issue 1, beginning September 30, 2020, and Issues 3–5 and 7–11 were "impacted by laws pertaining to privately placed Students." (AR

---

[3] Plaintiff further cites to AR 1992 in support of his argument. (Doc. No. 44 at 20.) However, this citation is generally to the OAH Hearing held on January 10, 2023, which runs 232 pages in length. Where Plaintiff has not cited relevant portions of the record, the Court does not find or supply evidence on L.B.'s behalf. *See Indep. Towers of Wash.*, 350 F.3d at 929 ("[J]udges are not like pigs, hunting for truffles buried in briefs.") (quoting *Dunkel*, 927 F.2d at 956).

1907.) Thereafter, the ALJ recited the holding in *Capistrano* as it pertained to the case before him. (*See* AR 1907–08.) Ultimately, the ALJ stated that under *Capistrano*,

> [I]f a student has been enrolled in a private school by their parents, the school district does not need to develop an IEP, even when reimbursement has been requested or if a complaint has been filed. When parents withdraw a student from public school and place a student in private school, all a parent has to do is ask for the school district to develop an IEP, and then the school district must develop one. There is no freestanding requirement that IEPs be conducted for privately placed student.

(AR 1908 (citing *Capistrano*, 21 F.4th at 1138–40).)

The Ninth Circuit in *Capistrano* instructed that "if the student has been enrolled in private school by her parents, then the district need not prepare an IEP, even if a claim for reimbursement has been filed." 21 F.4th at 1138. Based on a plain reading of 20 U.S.C. § 1412(a)(10), which "governs the provision of services for children in private school," *id.* at 1138, the court explained that "the IDEA recognizes only two categories of private school students: 'children placed unilaterally in private schools by their parents' and 'children placed in private schools by a public agency.'" *Id.* at 1138–39 (quoting *Hooks v. Clark Cnty. Sch. Dist.*, 228 F.3d 1036, 1039 (9th Cir. 2000)). Based on that dichotomy, "[i]f parents enroll their child in private school and make a claim for reimbursement, then the child has still been enrolled in private school by her parents, . . . and an IEP is not required unless the parents ask for one." *Id.* at 1139. While a district's obligation to prepare an IEP "does not depend on whether the parents cooperate[,]" "it does depend on whether the child has been enrolled by her parents in private school . . . ." *Id.* The Ninth Circuit thus concluded that the district did not have to develop an IEP for the student. *Id.* at 1140.

Here, Plaintiff asserts the ALJ misinterpreted and misapplied *Capistrano* because the "ALJ asserted that Parents' communications regarding IEP meetings did not qualify as requests for the District to develop an IEP, even though all Parties construed them as such requests and held IEP meetings in response." (Doc. No. 44 at 21.) However, as discussed above, *supra* § III.A.1.a.i, while Parents requested IEP meetings, there is no support from

24

the Administrative Record that Parents requested the District to develop an IEP while L.B. was privately placed. Thus, the ALJ did not misapply or misinterpret *Capistrano* in this instance.

Moreover, Plaintiff argues that "Parent understood that funding for [residential treatment center] placement is normally determined at an IEP meeting. . . . Parents did not need to further clarify that their email intended to be a request for an IEP meeting because the District responded by scheduling one. (Doc. No. 44 at 22.) Specifically, on March 6, 2021, Parents emailed District, stating, "I refer to your letter of October 1, 2020 refusing to fund a placement for our son, [L.B.]. . . . and request that the District reconsiders its determination not to fund the placement." (AR 1085.) The District responded that they would schedule an IEP meeting to discuss. (AR 1087.) However, as stated in *Capistrano*, "if the student has been enrolled in private school by [his] parents, then the district need not prepare an IEP, even if a claim for reimbursement has been filed. . . . But regardless of reimbursement, when a child has been enrolled in private school by [his] parents, the district only needs to prepare an IEP if the parents ask for one." *Capistrano*, 21 F.4th at 1138. Here, while Parents requested reimbursement and agreed to attend an IEP meeting, there is no evidence that Parents requested for the District to develop an IEP for L.B.

Further, it appears Plaintiff misinterprets *Capistrano*. Plaintiff asserts "[t]he ALJ interprets *Capistrano* as requiring Parents to use specific language when requesting an IEP meeting, even when everyone involved understands their communication to be a request for an IEP meeting." (Doc. No. 44 at 22.) However, *Capistrano* holds that the district need not prepare an IEP *document* until requested by parents, and speaks nothing of IEP *meetings*. Accordingly, the Court finds the ALJ did not misapply or misinterpret *Capistrano* in its Decision.

**B.  Whether the District Denied L.B. a FAPE for the 2020–2021 School Year**

Turning to the merits of this appeal, Plaintiff claims the ALJ erred on all issues in finding the District did not deny L.B. a FAPE from August 30, 2020, through December 17, 2021.

1

2

### 1.    Failure to Implement December 18, 2019 IEP as Continued on January 27 and February 27, 2020

First, Plaintiff contends the ALJ incorrectly found for the District on the issue of whether the District failed to implement L.B.'s December 18, 2019 IEP, as continued on January 27 and February 27, 2020. (Doc. No. 44 at 22.) Specifically, Plaintiff asserts L.B. should have received group mental health services pursuant to his IEP but the District failed to provide any, and that L.B.'s Specialized Academic Instruction ("SAI") should have consisted of "small group instruction, direct instruction, intensive skill building sessions, [and] individualized instruction including behavior intervention" but that the District failed to do so. (*Id.* at 23 (citing AR 808).)

Regarding group therapy, Plaintiff asserts the "failure to provide group therapy was a material violation of L.B.'s IEP because this was a crucial component of the offer of FAPE and critical to address L.B.'s needs." (*Id.*) The District responds that L.B.'s IEP indicated that therapy could be provided as individual, group, and/or family therapy, and that the IEP described the frequency of services as an annual amount. (Doc. No. 53 at 25; *see* AR 808 (February 27, 2020 IEP stating Mental Health Related Services ("MHRS") may include "individual, group and/or family therapy" and "[i]f requested; may define frequency; i.e; monthly, bi-weekly, bi-monthly or monthly").) The District contends that "while District would typically provide MHRS sessions once per week, the IEP allowed flexibility over the course of a year and indicated that it could include parental consultation in addition to direct services." (Doc. No. 53 at 25; *see* AR 790 (February 27, 2020 IEP stating the District would provide 53.5 hours of MHRS per year).) The District further argues that 21 days did not allow sufficient time for the District to build rapport with L.B., and that "District personnel were in frequent communication with Parents and attempted to build rapport with L.B. so that District could implement its full yearly service." (Doc. No. 53 at 25.) Finally, the District asserts that even if it were required to provide L.B. with his services on a weekly basis, which is unsupported by the record, L.B. would have only

missed three service sessions, and that "[t]his discrepancy would be minor and not a material failure to implement." (*Id.*)

Pursuant to the IDEA, a district must meet each student's "unique educational needs," which is broadly construed to include academic, social, health, emotional, communicative, physical, and vocational needs. *Seattle Sch. Dist. No. 1 v. B.S.*, 82 F.3d 1493, 1501 (9th Cir. 1996), *abrogated in part on other grounds by Schaffer v. Weast*, 546 U.S. 49 (2005). Accordingly, to provide a FAPE, a district must provide educational instruction "specially designed to meet the unique needs of the [disabled] child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Rowley*, 458 U.S. at 188–89 (internal quotations omitted). As long as a school district meets the requirements of the IDEA in its provision of education to students, questions of methodology are left to the district's discretion. *Id.* at 208.

Here, the ALJ properly held the District appropriately implemented L.B.'s IEP during distance learning because although L.B. missed three individual counseling sessions, the District made these services available to him. (AR 1917.) The ALJ further found "the time frame, 22 days, was too short to determine if Student would continue missing certain classes and services, or if this was a temporary problem experienced by all students when transitioning to a new school or learning platform . . . ." (AR 1918.)

Plaintiff also argues the District denied L.B. a FAPE by failing to offer 6 hours of SAI per day as required by the IEP. (Doc. No. 44 at 23.) Specifically, Plaintiff asserts the District only offered 3.3 hours of direct instruction per day, and the rest of the school day consisted of asynchronous learning with no direct instruction. (*Id.*) L.B.'s IEP stated SAI would consist of "small group instruction, direct instruction, intensive skill building sessions, [and] individualized instruction including behavior intervention." (AR 808.) Plaintiff also contends the ALJ misstated facts in stating, "Student received asynchronous instruction, meaning instruction provided through learning packets and supervised by a teacher." (*Id.* (quoting AR 1916–17).) Plaintiff contends asynchronous learning was not supervised by a teacher. (*Id.* (citing AR 2160, 2123, 2137–38, 3458–59).) In response, the

27

District asserts that through synchronous and asynchronous instruction, L.B. had available the equivalent of 30 hours of SAI per week, and that any discrepancy in the provision of services during this time was minor. (Doc. No. 53 at 24.)

In the Ninth Circuit "a *material* failure to implement an IEP violates the IDEA. A material failure occurs when there is more than a minor discrepancy between the services a school provides to a disabled child and the services required by the child's IEP." *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 822 (9th Cir. 2007). While a student need not "suffer demonstrable educational harm in order to prevail[,]" the "child's educational progress, or lack of it, may be probative of whether there has been more than a minor shortfall in the services provided. For instance, if the child is not provided the reading instruction called for and there is a shortfall in the child's reading achievement, that would certainly tend to show that the failure to implement the IEP was material. On the other hand, if the child performed at or above the anticipated level, that would tend to show that the shortfall in instruction was not material." *Id.*

The ALJ found each of L.B.'s classes "was small and structured, with embedded specialized academic instruction . . . consistent with Student's IEP." (AR 1917.) Moreover, the ALJ noted the District's mental health providers frequently communicated with Parents while L.B. was enrolled at Riley regarding his school program, progress, and mental health needs. (*Id.*) District staff also contacted Parents regarding L.B.'s absences and discussed L.B.'s irritability and also his difficulty accessing the videoconference platform. (*Id.*) Ultimately, the ALJ held the District "lawfully provided distance learning and materially implemented Student's specialized academic instruction . . . through synchronous and asynchronous instruction." (AR 1918.) Again, the ALJ noted that while L.B. missed some classes, each class and service was made available to him. (*Id.*)

Next, the ALJ found the District appropriately met L.B.'s educational needs during distance learning, including through asynchronous instruction. (AR 1916.) Specifically, the ALJ found that "[f]rom 1:30 PM to 3:30 PM each school day, Student received asynchronous instruction, meaning instruction provided through learning packets and

supervised by a teacher." (AR 1916–17.) Plaintiff asserts asynchronous learning was not supervised by a teacher, and thus did not qualify as SAI. (Doc. No. 44 at 23.) Plaintiff points to the testimony of Jordan Means, the District's mental health service provider, who stated the District did not provide L.B. with six hours per day of behavior intervention. (AR 2160.) However, to this point, behavior intervention was merely one component of SAI pursuant to L.B.'s IEP. Additionally, Mr. Means stated that for "a student who's attending an online school for less than two hours a day not attending therapy," the student would not be accessing a high level of structure throughout their day. (AR 2123.) Mr. Means further testified that a student doing work by themselves out of a packet would "probably not" qualify as SAI. (AR 2140.) Moreover, Mr. Means testified that if L.B. were to attend all classes and do the asynchronous work, he would receive 30 hours of SAI per week during distance learning. (AR 2052, 2137–38; *see also* AR 2326 (testimony of Ms. Solario, stating that if L.B. had returned to Riley on October 9, 2020, he would have been guaranteed 30 hours per week of SAI through synchronous and asynchronous learning).) Indeed, when asked "[h]ow often, if at all, did [L.B] work on school work [during asynchronous learning][,]" L.B.'s father testified "I would say never." (AR 3458.) Plaintiff also fails to point the Court to testimony which confirms that asynchronous learning was not supervised by a teacher. Thus, the ALJ correctly determined that SAI services were made available to L.B., although he missed his classes.

Further, there is no evidence that any discrepancy in the provision of SAI services constituted a "a *material* failure to implement an IEP." *Van Duyn*, 502 F.3d at 822. L.B.'s October 2, 2020 Progress Report on Annual Goals stated that in the areas of social/emotional/behavioral, he had shown progress on his IEP goals. (AR 1503.) Mr. Means testified that L.B. "was turning in a good amount of his assignments in class" and "was turning in assignments at a higher rate[,] much higher than most of our other students." (AR 2192.) Indeed, Mr. Means reported that L.B. had progressed to 80% on his goal of identifying instances that evoke unsafe ideation or emotional outbursts, from his baseline of 20%. (AR 1503.) Additionally, L.B. was completing and turning in his

classroom assignments at a rate of 60%, a significant increase from his baseline of 10%. (*Id.*) A student report dated September 22, 2020, also indicated that L.B. was at or above benchmarks in statewide testing. (AR 1499–51.) Accordingly, L.B. performed at the anticipated level, and Plaintiff did not demonstrate that the District's error constituted a material failure to implement the December 18, 2019 IEP, as continued on January 27 and February 27, 2020.

### 2. Failure to Assess L.B. in the Area of Behavior in October and November 2020

Plaintiff next contends the ALJ misstates important facts regarding L.B.'s behavioral needs by writing "Student did not demonstrate any behavior issues while at school, nor were any behavior concerns reported by Student's teachers or behavior aides. To the contrary, Student did well in his academic classes, was not disruptive, and got along with others." (Doc. No. 44 at 23.)

Regarding the issue of assessing behavior, the ALJ found the District did not fail to assess in the area of behavior because "despite frequent communications between Parents and school staff throughout September 2020, Parents failed to communicate that Student demonstrated increased behavioral problems at home." (AR 1921.) The ALJ ultimately found that "neither Parents nor school staff requested any assessment, including for behavior, during this time." Additionally, the ALJ stated "San Diego mental health service provider Means *credibly testified* Student did not demonstrate any behavior issues while at school, nor were any behavior concerns reported by Student's teachers or behavior aides." (AR 1921 (emphasis added).)

Under the IDEA, a school district must assess a student in all areas of suspected disability, including orientation and mobility skills, health and development, and motor abilities. 20 U.S.C. § 1414(b)(3)(B); *see also* 34 C.F.R. § 300.304. A district must ensure the reevaluation of a child with a disability if it "determines that the educational or related services needs . . . warrant a reevaluation[.]" *Id.* § 300.303(a).

///

Here, the ALJ did not misstate important facts. The excerpt which Plaintiff opposes was based on the testimony of Mr. Means, though Plaintiff omits that portion in his opening brief, and the ALJ's finding is consistent with the testimony. Indeed, Mr. Means testified that he did not observe any emotional difficulty in the classroom between August 31, 2020, through September 29, 2020, and did not remember either of L.B.'s parents communicating any suicidal or homicidal ideation, or emotional or behavioral issues at home. (AR 2214–15.) Mr. Means further testified he did not believe the District should have provided L.B.'s parents with an assessment plan to assess L.B. in the area of behavior "[b]ecause when [L.B.] was in the classroom, [L.B.] did a phenomenal job." (AR 2188.)

Plaintiff further notes Mr. Means wrote an email to Parents stating, "[L.B.] tends to log off and we do not see him for the rest of the day when he is asked to switch to our PE teacher's zoom meeting. He is expected to be in zoom meetings until 12:50 and we typically lose him at 10:50." (AR 853.) However, several of the challenges presented by L.B. were experienced by many students due to the circumstances of COVID-19. Indeed, Mr. Means testified that "basically every student has missed classes or logged in late, logging off early," (AR 2174), and that "everyone was missing classes, and it was a challenge for all of us. So we were – we were doing what we could." (AR 2188.)

Thus, given the forgoing, the Court finds the ALJ correctly found the District did not fail to assess L.B. in the area of behavior in October and November 2020 and did not misstate important facts in this decision.

### 3.    Issues 3 and 4

Regarding the ALJ's decision of Issues 3 and 4, Plaintiff asserts the District failed to offer appropriate educational placement, services, supports, annual goals, present levels of performance, to consider the full continuum of educational placements, failed to revise L.B.'s IEP, and predetermined the IEP. (Doc. No. 44 at 23–27.)

In his decision, the ALJ found that because Parents did not request changes to L.B.'s IEP, disagree with the IEP, or ask the District to develop an IEP while L.B. was privately placed, the District was not obligated to offer a FAPE, including appropriate educational

placement, services, supports, annual goals, present levels of performance, to consider the full continuum of educational placements, and revising L.B.'s IEP without Parents' request. (AR 1924–26.) While Plaintiff asserts L.B. was denied a FAPE because the District "continued to offer Riley despite L.B.'s inability to derive meaningful educational benefit from Riley's virtual program[,]" the Court agrees with the ALJ that the District was not obligated to develop an IEP or offer a FAPE in October and November 2020 because L.B. was privately placed. Indeed, as discussed above, the District "was not obligated to develop an IEP for Student until requested to do so by Parents." (AR 1926.)

Regarding the issue of predetermination, the district "must take steps to ensure that one or both of the parents of a child with a disability are present at each IEP Team meeting or are afforded the opportunity to participate." 34 C.F.R. § 300.322(a). "Parental participation in the IEP and educational placement process is critical to the organization of the IDEA." *Doug C. v. Hawaii Dept. of Educ.*, 720 F.3d 1038, 1043 (9th Cir. 2013). In fact, "[a]mong the most important procedural safeguards [of the IDEA] are those that protect the parents' right to be involved in the development of their child's education plan[,]" and a district's infringement on "the parents' opportunity to participate in the IEP formulation process . . . clearly result[s] in the denial of a FAPE." *Amanda J.*, 267 F.3d at 882, 892.

A district may not predetermine the contents of an IEP; "[a] school district violates IDEA procedures if it independently develops an IEP, without meaningful parental participation, and then simply presents the IEP to the parent for ratification." *Ms. S. ex rel. G. v. Vashon Island Sch. Dist.*, 337 F.3d 1115, 1131 (9th Cir. 2003) *superseded by statute on other grounds*, 20 U.S.C. § 1414(d)(1)(B). A district also "may not enter an IEP meeting with a 'take it or leave it' position, and if it does so, then even the parents' decision not to cooperate thereafter may not excuse the district's error." *Id.*

Mr. Means sent an email to Parents on October 1, 2020, stating, "In conversation with most of our IEP team it sounds like the IEP will most[ly] remain the same . . . the district feels we can meet his needs with the services we have offered so there would be no

financial support for his current placement at the wilderness therapy." (AR 911.) Plaintiff asserts this is evidence that the District predetermined the contents of the IEP without meaningful parental participation. (Doc. No. 44 at 26.)

The ALJ found that because Parents did not request changes to L.B.'s IEP, disagree with the IEP, or ask the District to develop an IEP while L.B. was privately placed, the District was not obligated to offer or provide L.B. with a FAPE after September 30, 2020. (AR 1924–25.) The ALJ further held that while the IEP team met on October 9, 2020, to disenroll L.B. from Riley, they continued the meeting to November 5, 2020, because L.B.'s mother could not attend. (AR 1925.) Additionally, the District and Parents agreed the only purpose for the amendment IEP was to disenroll L.B. from Riley. (*Id.*) Moreover, the ALJ found the District had "offered the same educational program contained in Student's February 27, 2020 annual IEP, and Parents consented in full to the amendment IEP." (*Id.*) The Court thus concurs with the ALJ's finding that Plaintiff did not meet the burden of proof to demonstrate he was denied participation in L.B.'s IEP where Parents did not request changes to L.B.'s IEP, disagree with the IEP, or ask the District to develop an IEP while L.B. was privately placed.

### 4.    Failure to Consider Dr. Zeisz's Independent Evaluation at the April 27, 2021 IEP Meeting

Plaintiff next argues L.B. was denied a FAPE at the April 27, 2021 IEP team meeting because the District failed to consider Dr. Zeisz's IEE. (Doc. No. 44 at 27–28.) In his decision, the ALJ found the "IEP team considered Dr. Zeisz's report and determined they would need additional information, including new school district assessments, before revising Student's IEP. No changes to Student's operative IEP were offered at that time." (AR 1930.) Thus, the ALJ held that L.B.'s claim that the District did not consider Dr. Zeisz's IEE was incorrect, as "[t]he April 27, 2021 IEP team meeting was held to review Dr. Zeisz's independent educational evaluation and did so, thoroughly, and with school staff qualified to consider the report." (*Id.*) The ALJ also noted that the District is required

only to consider the independent assessor's report, not to accept all the recommendations. (AR 1929 (citing *G.D. v. Westmoreland Sch. Dist.*, 930 F.2d. 942, 947 (1st Cir. 1991)).

At the April 27, 2021 IEP team meeting, District staff did not have follow-up questions for Dr. Zeisz. (AR 1224–25.) However, at the meeting, Pamela Busch, Riley's principal, stated she "read through the assessment . . . . [and] I'm now looking at the placement recommendations which are listed and summarized for us. And I feel that these are all understandable and absolutely doable." (AR 1224.) Other members of the IEP team also engaged in further discussion with Dr. Zeisz. (AR 1224–26.) Although the IEP team did not ask any follow-up questions after Dr. Zeisz presented her IEE report and did not follow its recommendations, Plaintiff fails to show this equates to a failure to consider the IEE. Indeed, the April 27, 2021 IEP states: "Due to no current IEP the team is presenting an annual IEP today with the districts offer of FAPE to include consideration for the IEE parents have provided us- a report From Dr. (Zeizs) [sic] on 3/15/2021 with a recommendation of residential program (attached to this IEP)." (AR 1181.) As such, the Court concurs with the ALJ's finding that the District considered Dr. Zeisz's IEE at the April 27, 2021 IEP team meeting.

### 5. Failure to Consider the Full Continuum of Educational Placements at the April 27, 2021 IEP

As previously stated, *supra* Section III.A.1.a.v., the ALJ omitted L.B.'s Issue 1(dd) from his decision. Thus, the Court will independently review this issue.

Plaintiff asserts that where Ms. Solario admitted the District did not consider placing L.B. in a residential treatment center at any IEP meeting, this resulted in a failure to consider a full continuum of placement options. (Doc. No. 44 at 28–29 (citing AR 2444–45).) However, Plaintiff misstates Ms. Solario's testimony. Ms. Solario testified at the OAH Hearing that between December 2019 and December 2021, "there was no IEP team meeting in which the team revised the present levels of performance [or] created new goals . . . ." (AR 2444.) Ms. Solario explained the IEP team "never revised the offer of FAPE

because we hadn't updated the data. But there was a standing offer of FAPE for the last IEP." (AR 2445.)

Here, the April 27, 2021 IEP Draft ("April 27 IEP Draft"), sent before the IEP meeting, states "Parents sent a request to re-evaluate need for Residential placement . . . at which point the district offered an IEP meeting to review the request and a received IEE[.]" (AR 1181.) Moreover, the April 27 IEP Draft states that "[d]ue to no current IEP the team is presenting an annual IEP today with the districts offer of FAPE to include consideration for the IEE parents have provided us . . . with a recommendation of residential program[.]" (*Id.*) The April 27 IEP Draft further stated that "[if] parents chose to enroll [L.B.] in [District], an IEP will be held within 60 days to update present levels, goals and the IEP based on current needs since he has not attended for almost year." (AR 1182.)

Thereafter, the April 27, 2021 Updated IEP ("April 27 Updated IEP"), drafted after the IEP meeting, states:

> 30 minutes before scheduled IEP meeting, [L.B.]'s family sent Riley school a letter from another program he is currently enrolled in stating his progress in that program. . . . The [District] was not notified previously that they had, since December, placed their son in a different residential placement outside of Trails, therefore, our school District was not able to obtain updated present levels and progress of where [L.B.] has been residing for the past four months. The IEP meeting was tabled so that the District may seek out more current present levels and progress due to this updated information from the parent. . . . The District is requesting to conduct our own assessments since [L.B.] has no[w] resided in two different types of residential programs since his last evaluation to ensure we have appropriate and current data regarding [L.B.]'s placement.

(AR 1213–14.)

Further, when Ms. Solario was asked at the OAH Hearing whether the IEP team considered residential treatment at the April 27 IEP team meeting, she testified, "I don't believe that IEP meeting came to completion." (AR 2527.) She further testified that, after reviewing the April 27 Updated IEP, the team did not consider residential treatment at that meeting because "[t]he team action or the signature page said that time constraint ended

the meeting, so no, it did not happen." (AR 2529.) Finally, Ms. Solario testified that at the time of the April 2021 IEP meeting, she did not believe that a residential treatment center provided L.B. with a FAPE in the least restrictive environment. (AR 2537.)

Ultimately, in reviewing the administrative record, the Court finds that regarding the April 27, 2021 IEP, that the District considered—but did not offer—a residential treatment center for L.B. The District did not fail to offer L.B. a FAPE by failing consider the full continuum of educational placements at the April 27, 2021 IEP, but merely disagreed with L.B.'s position.

### 6. Failure to Provide Parents with Prior Written Notice of Its Decision Not to Place L.B. at a Residential Treatment Center

Plaintiff claims the ALJ further erred in finding L.B. failed to prove by a preponderance of the evidence that the District denied him a FAPE during the 2020–2021 school year by failing to provide Parents prior written notice of its refusal to fund a residential treatment center. (Doc. No. 44 at 29; *see* AR 1923–24.) The ALJ found in favor of the District for several reasons. Relevant here, the ALJ found the District provided Parents with prior written notices on October 1, 2020, and October 26, 2020, both stating the District refused to fund a residential treatment center placement for L.B. (AR 1923.) The ALJ further held that, although L.B.'s mother requested the District to reconsider its refusal to fund a residential treatment center by email on March 6, 2021, L.B. failed to provide any law to support that the District was required to send another prior written notice under the circumstances. (*Id.*) "Rather, San Diego informed Parents twice that it refused to fund a residential treatment center because it believed Student's operative IEP offered a FAPE. San Diego was not required to send another prior written notice regarding the same refusal." (*Id.*)

Plaintiff asserts that Parents provided new information—Dr. Zeisz's evaluation recommending placement at a residential treatment center—to the District that was not available at the time of the 2020 prior written notices. (Doc. No. 44 at 29.) Plaintiff contends the District should have provided a prior written notice as to why it rejected

Parent's request for residential treatment center placement, and that "there is no law stating that a District does not need to provide [prior written notice] when a Parent requests a placement for a second time simply because it had already provided a [prior written notice] to the earlier request." (*Id.*)

Here, the ALJ properly found the District was not required to send another prior written notice regarding the same refusal because it believed L.B.'s operative IEP offered a FAPE. Although Parents requested that District reconsider its decision not to fund L.B.'s placement at a residential treatment center on March 6, 2021, L.B.'s operative IEP had not changed. Moreover, as discussed above, after the District reviewed Dr. Zeisz's IEE, the District did not follow Dr. Zeisz's recommendations and still refused to fund a residential treatment center because it believed L.B.'s operative IEP offered a FAPE. Because the District was under no obligation to send another prior written notice regarding the same refusal, and Plaintiff fails to provide any law to support his assertion, the Court affirms the ALJ's findings as to finding L.B. failed to prove that the District denied him a FAPE during the 2020–2021 school year by failing to provide Parents with prior written notice.

### 7. Failure to Make a Formal, Clear, and Specific FAPE Offer at the April 27, 2021 IEP Team Meeting

Plaintiff asserts the District failed to make a formal, clear, and specific offer of FAPE at the April 27, 2021 IEP team meeting. (Doc. No. 44 at 30.) In his brief, Plaintiff asserts that at the April 27, 2021 IEP team meeting, the District stated it wanted to gather more information before making an offer of FAPE. (AR 1235.) Moreover, at the hearing, Plaintiff argued that Ms. Busch stated she did not know if the District could make an offer of FAPE.

At the April 27 IEP team meeting, Ms. Busch explained that they "reached out to Trails and got a little bit of information therapeutically but we didn't see anything academically so we are a little at a loss there with getting actual academic present levels because despite our efforts they were not provided to us. And then with getting that letter earlier today, that was the first that we were made aware that he was actually in I think

South Carolina at a different residential place. And so otherwise, we would've been reaching out to them asking for the release of information and further input but we didn't know to ask because we honestly didn't know he was there." (AR 1221.) Thus, Ms. Busch stated they needed to get more information and reconvene for another IEP meeting. (*Id.*) Moreover, Ms. Busch stated: "I am not comfortable saying 'this is our offer right now[,] these are the goals we would work on[,] this is the placement we are looking at.' When we are finding out there is four months of information out there that we weren't able to obtain." (AR 1235.) Thus, Ms. Busch concluded they would "table this meeting so we can get that information" and stated, "how much is that [information] going to change what our offer of FAPE is for offering the IEP? I can't even tell you yet. It depends on how much we get back and what we get back from them. But it is worth looking into to make sure we are doing right by your son educationally." (*Id.*) The IEP team agreed they would reconvene shortly after the District received the information. (*Id.*) The Court does not find in the April 27, 2021 IEP team meeting transcript that Ms. Busch stated they could not make an offer of FAPE, as asserted by Plaintiff.

The ALJ found, and the Court agrees, that L.B.'s claim is misplaced because the District was under no duty to offer a FAPE at that time because Parents had privately placed L.B. and did not request for the District to develop an IEP. (AR 1930 (citing *Capistrano*, 21 F.4th at 1138–40).) The Court affirms the ALJ's findings.

### 8. Failing to Offer FAPE at the October 8, 2021 IEP Team Meeting

Plaintiff similarly asserts the District failed to make any offer of FAPE, denying L.B. a FAPE, because its evaluation was not yet complete at the time of the October 8, 2021 IEP team meeting. (Doc. No. 44 at 30.) The ALJ again found the District was not obligated to develop an IEP for L.B. while he was privately placed. (AR 1937.)

Moreover, the ALJ found, and Plaintiff does not contest, that the District initially scheduled an IEP team meeting on October 8, 2021, to review the assessments agreed to by Parents on May 13, 2021, but that the assessments were not completed by that time. (*Id.*) "Accordingly, the IEP team briefly met on October 8, 2021, and agreed to continue

the IEP team meeting to December 2, 2021," to provide the District additional time to complete the assessments. (*Id.*) Parents agreed to this continuance and the IEP team thus met on December 2, 2021, during which the IEP team reviewed the assessments. (*Id.*) The ALJ ultimately held that the District's "delay in completing the assessments and holding an IEP team meeting to review the assessments" did not deny L.B. a FAPE. (*Id.*)

### 9. Failure to Assess and Develop an IEP Within 60 Days of Parental Consent to an Assessment Plan Signed May 13, 2021

Regarding the above-captioned issue, the ALJ found that while the evidence showed the District did not complete the assessments within the timeline required for special education assessments, Parents did not make L.B. available for assessments in California. (AR 1934.) Rather, the ALJ found that Parents only permitted the District to assess L.B. at a private school in South Carolina, thus placing a condition to assessing L.B. (*Id.*) As noted by the ALJ, federal courts have held that a parent who places conditions on assessments may be regarded as having refused consent to the assessments. (AR 1935 (citing *G.J. v. Muscogee Cnty. Sch. Dist.*, 704 F. Supp. 2d 1299 (11th Cir. 2012), and *R.A. v. W. Contra Costa Unified Sch. Dist.*, No. 14-cv-0931-PJH, 2015 WL 4914795 (N.D. Cal. Aug. 17, 2015).)

First, the Court finds there is no evidence to support the ALJ's finding that Parents placed a condition on the District. The District sent its assessors 2,341 miles to assess L.B. in South Carolina, and its assessors were then required to abide by COVID-19 restrictions set by the private school, which further extended their time out-of-state at great cost to the District. (AR 1936.) However, the District does not cite to, and the Court does not find, evidence that the District ever requested Parents to make L.B. available for assessments in California, or that Parents required the assessors to go to L.B.'s private school in South Carolina. Indeed, it appears that although evaluations of L.B. were conducted on August 19, 2021, (AR 2656), and again on October 25 and 26, 2021, (AR 3188–89), the assessor who conducted L.B.'s evaluation did not contact Parents until November 22, 2021, (AR 1358–59), after the evaluations were already conducted.

However, as found by the ALJ, L.B. was privately placed by Parents, who did not anticipate L.B. leaving private placement until the end of December 2021. (AR 1936.) During this time, the District had no obligation to develop an IEP for L.B., and Parents did not request the District to develop an IEP. (*Id.*) Regardless, the District completed the assessments and reviewed them with Parents during an IEP team meeting held on December 2, 2021. (*Id.*) Parents consented in full to the December 2, 2021 IEP and did not dispute any of the assessments. (*Id.*) The Court affirms the ALJ's findings here.

Additionally, the ALJ found, and the Court agrees, that L.B. failed to show he was denied a FAPE by the District's failure to assess and review the assessments within 60 days, which constitutes a procedural violation of the IDEA, because he failed to show evidence meeting any of the requirements of a procedural violation. (AR 1936.) A procedural violation of the IDEA constitutes a denial of a FAPE if the violation: (1) impeded the child's right to a FAPE; (2) significantly impeded the parent's opportunity to participate in the decision making process; or (3) caused a deprivation of educational benefits. Cal. Educ. Code § 56505(f)(2); *W.G. v. Bd. of Trs. of Target Range Sch. Dist. No. 23*, 960 F.2d 1479, 1484 (9th Cir. 1992), *superseded by statute in part on other grounds*. The ALJ found the assessments were finally completed on December 2, 2021, wherein the 60 days expired on September 28, 2021. (AR 1936.) The ALJ found this delay did not impede L.B.'s right to a FAPE, significantly impede Parents' opportunity to participate in the decision-making process, or cause a deprivation of educational benefits because the District was unable to implement the IEP until Parents placed L.B. back in public school, which occurred on January 7, 2022. (*Id.*) Thus, any delay to the assessments or IEP team meeting to review the assessments caused no harm to L.B. or Parents. (*Id.*) Plaintiff does not address this point in his opening brief. (*See* Doc. No. 44 at 30–31.)

In conclusion, the ALJ's decision was careful and thorough, well-reasoned, and supported by the record. Therefore, based on the record, the parties' briefing, and giving appropriate deference to the ALJ's conclusions, the Court **DENIES** L.B.'s motion for summary judgment.

40

### C.     Placement at Residential Treatment Centers and Propriety of Reimbursement

In a case where FAPE was disputed like this one, an alternative placement by parents is not required to meet state-mandated certification requirements. *Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 14 (1993). "Despite that relaxed requirement, however, parentally obtained private school placement must nonetheless be deemed appropriate for the child in order to merit potential reimbursement." *Covington v. Yuba City Unified Sch. Dist.*, 780 F. Supp. 2d 1014, 1024 (E.D. Cal. 2011); *see Florence Cnty.*, 510 U.S. at 15 (parents entitled to reimbursement only upon a judicial finding both that the public placement violated the IDEA and a determination that the private placement at issue was proper under the Act)). The "analysis must focus on whether [the student's] placement may be considered necessary for educational purposes, or whether the placement is a response to medical, social, or emotional problems that is necessary quite apart from the learning process." *Clovis Unified Sch. Dist. v. Cal. Off. of Admin. Hearings*, 903 F.2d 635, 643 (9th Cir. 1990).

Because the ALJ concluded the District prevailed as to all issues, he did not reach the issue of whether Trails and/or Whetstone were appropriate placements for L.B. (*See generally* AR 1902–41.) The District argues Plaintiff fails to prove that Trails and Whetstone were appropriate placements to meet L.B.'s educational needs, and that Plaintiff only provides testimony from L.B.'s primary therapist, Andrea Taylor from Whetstone, to support his placement. (Doc. No. 53 at 27–28.) As the District notes, Ms. Taylor never observed L.B. in his academic classes, nor was she involved in his learning plan. (*Id.* at 28 (citing AR 2939).) The District raised this issue both in its Opposition to Plaintiff's Motion for Summary Judgment, (*id.* at 27–28), and at the hearing before the Court. At the hearing, Plaintiff did not meaningfully address the District's argument as to the sufficiency of placement.

///

///

41

The Court agrees that Plaintiff fails to provide evidence as to the sufficiency of the residential treatment programs in which L.B. was placed, and thus, even if Plaintiff prevailed on the merits, he fails as to the damages he seeks. Although certification is not a mandated prerequisite to reimbursement, it still merits noting that Plaintiff did not provide any evidence regarding the credentialing of staff or teachers working with L.B. at either placement. There was no evidence that an IEP was developed at either Trails or Whetstone directed to L.B.'s particular areas of educational deficit. Moreover, the evidence demonstrates that L.B.'s placements were primarily a response to his mental health issues, not his educational needs. Thus, based on the evidence provided to the Court, the expenses for which Plaintiff requests reimbursement is not recoverable under the IDEA.

## IV.    CONCLUSION

In accordance with the foregoing, the Court concludes as follows:

1. The ALJ's Decision is **AFFIRMED** and judgment is entered for the District.
2. Plaintiff's motion for summary judgment (Doc. No. 44) is **DENIED**.
3. Plaintiff's request for reimbursement and attorney's fees is **DENIED**.
4. The Clerk of Court is **DIRECTED** to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated:  August 12, 2024

Hon. Anthony J. Battaglia
United States District Judge